**Opinion issued September 13, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-10-00710-CV

————————————

**TRYCO ENTERPRISES, INC., SHARON C. DIXON, JAMES DIXON, CROWN STAFFING, INC., AND TROY KEITH DIXON, Appellants**

**V.**

**JAMES A. ROBINSON, Appellee**

**On Appeal from 189th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2004-49672**

## O P I N I O N

This is an action brought by appellee, James A. Robinson, to enforce the judgment entered in his favor in *Robinson v. Texas Workforce Commission and Tryco Enterprises, Inc.*, No. 2000-32376, in the 113th District Court of Harris

County, Texas ("the FLSA suit").  Appellants, Tryco Enterprises, Inc. ("Tryco"), Sharon C. Dixon, James Dixon, Crown Staffing, Inc. ("Crown Staffing"), and Troy Keith Dixon, appeal the judgment of the trial court holding them jointly and severally liable for the amounts owed to Robinson by Tryco in the FLSA suit and permitting enforcement of that judgment against the assets of all appellants.

In three issues, appellants argue that the trial court erred:  (1) in piercing the corporate veil when it held them jointly and severally liable for using the corporate form to avoid paying the judgment in the FLSA suit; (2) in admitting the prior testimony of a witness given in the trial of the FLSA suit without a showing that the witness was unavailable to testify; and (3) in holding Sharon and James Dixon personally liable for the previous judgment against Tryco in the FLSA suit under Texas Tax Code section 171.255.

We reverse the judgment of the trial court as to Troy Keith Dixon and render judgment that Robinson take nothing by his claims against him.  We affirm the judgment as to Tryco, Sharon Dixon, James Dixon, and Crown Staffing.

## Background

The Dixons owned and operated Tryco, a temporary staffing company, as their family business.  Sharon and James Dixon served as vice president and president, respectively, of the company, and their son Troy worked there as an employee.  From 1996 to 2000, Tryco employed Robinson as a van driver.  In

2

2000, after leaving Tryco, Robinson sued Tryco in the FLSA suit. He alleged that Tryco and the Dixons had violated the Fair Labor Standards Act ("FLSA") by failing to pay him substantial amounts of money for time worked in excess of forty hours per week and that the Dixons had fired him for refusing to return copies of travel logs that he had made to substantiate his claims. The regulatory scheme under which Robinson sued provides, in relevant part, that an employer who violates the provisions of the FLSA may be held accountable for such violations by an action for damages, attorney's fees, and costs in any federal or state court. *See* 29 U.S.C.S. §§ 201–19 (LexisNexis 2010).

On August 13, 2003, after a trial on the merits of his FLSA claim, a jury returned a verdict in favor of Robinson.

Nine days later, on August 22, 2003, Tryco forfeited its corporate privileges for failure to pay its franchise tax.

On September 11, 2003, the trial court signed a judgment against Tryco on the verdict in the FLSA suit for statutory damages, including $58,349 for unpaid overtime wages, $58,349 for willful violation of the FLSA, $16,558.75 in attorney's fees, $457 in court costs, and $603 in expenses, for a total of $134,316.75, plus prejudgment interest of $30,853.06.

One year later, on September 10, 2004, Robinson sued appellants in this action to enforce the judgment in the FLSA suit, alleging that Tryco forfeited its

3

corporate charter and fraudulently transferred its assets to avoid paying the judgment awarded to him. Robinson alleged that, prior to August 22, 2003—the date on which Tryco forfeited its corporate charter—Sharon and James Dixon transferred the employees and assets of Tryco to Crown Staffing, which they had also formed and for which they also served as vice president and president, "effectively leaving Tryco Enterprises Inc. as an empty shell and defrauding its creditors." He contended that the Dixons' transfer of employees and assets from Tryco to Crown Staffing "was a fraud against the rights of James Robinson, Defendant Judgment Debtors creditor, because the transfer was made with the intent to hinder, delay, or defraud Plaintiff and similarly situated creditors."

On March 23, 2006, the instant action was called to trial. During the ensuing bench trial, Robinson began to present evidence regarding piercing of Tryco's corporate veil. Appellants objected on grounds of lack of notice and surprise. The court ordered a sixty-day recess to allow Robinson to amend his pleadings to allege alter ego and piercing of the corporate veil.

In his second amended pleading, filed on March 27, 2006, Robinson asserted an alter ego theory of liability for the judgment in the FLSA suit, alleging that Tryco and its officers, the Dixons, organized and operated Crown Staffing, through their son Troy, as a mere tool or business conduit and that "James Dixon was the true owner/manager of both Tryco Enterprises, Inc. and Crown Staffing, Inc."

4

Robinson argued, alternatively, that Sharon and James Dixon organized and operated both Tryco and Crown Staffing as part of a single business enterprise and that James Dixon was the true owner/manager of both Tryco and Crown Staffing. Robinson asked that the trial court find James and Sharon Dixon individually liable "because they were officers of Defendant Tryco Enterprises, Inc. who forfeited corporate privileges on August 22, 2003 prior to the Judgment of September 11, 2003." He stated that "[f]orfeiture of corporate privileges results in liability for corporate officers" under Tax Code section 171.255(a).

On September 27, 2006, trial of this action to enforce the judgment in the FLSA suit resumed. Prior to the taking of testimony, Robinson presented to the court the following exhibits: (1) the September 11, 2003 judgment in the FLSA suit and an abstract of that judgment dated January 4, 2004; (2) a Tryco business card for Birt Edison, which showed that Tryco was a "temporary help service" and that Edison was its Industrial Office Manager and which provided contact information for Tryco; (3) the tax forfeiture of Tryco's corporate privileges dated August 22, 2003, certifying that Tryco's managerial officers were James Dixon, VP, and Sharon C. Dixon, P/S/T; and (4) a determination of forfeiture of Tryco's corporate charter by the office of the Texas Secretary of State, dated August 22, 2003, stating that Tryco had forfeited its corporate privileges and had not revived them within 120 days, that the Comptroller of Public Accounts had determined that

5

Tryco "does not have assets from which a judgment for any tax, penalty, or court costs imposed under Chapter 171 of the [Texas Tax] Code may be satisfied," and that "[i]t is therefore ordered that [the] charter or certificate of authority of the referenced entity be forfeited without judicial ascertainment and that the proper entry be made upon the permanent files and records of such entity to show such forfeiture as of the date hereof."

The judgment in the FLSA suit, the abstract of that judgment, and Edison's Tryco business card were offered and admitted into evidence without objection. Before the close of evidence, the trial court took judicial notice of Tryco's tax forfeiture and James and Sharon Dixon's status as managerial officers of Tryco.[1]

As his first witness, Robinson called former Tryco and Crown Staffing manager Birthol Edison by reading into the record the testimony given by Edison in the FLSA suit. Appellants' counsel objected to the admission of this testimony as hearsay. Robinson's counsel replied that Edison was Tryco's corporate representative, that the same counsel had represented each of the parties in the FLSA suit, and that Edison had been subject to cross-examination in that proceeding; therefore, his testimony was admissible as an admission of a party opponent. Robinson's counsel also pointed out that Edison's testimony in the

---

[1]     *See* TEX. R. EVID. 201 (providing for judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); TEX. R. EVID. 803(8) (public records as exception to hearsay rule).

FLSA suit had been given in open court, and appellants' counsel agreed that Edison was Tryco's corporate representative in that proceeding. The trial court conditionally admitted the testimony subject to appellants' submitting briefing showing why Edison's testimony from the FLSA suit was not admissible. The court permitted Robinson to read the testimony into the record over appellants' general objection that it was hearsay, and it offered appellants' counsel the opportunity to make specific objections during the reading. Counsel made no further objections to the testimony and permitted the testimony to be read. Appellants' counsel did, however, object to Robinson's subsequent testimony on the same matters on the ground that Edison's testimony on that subject was already in evidence.

Edison testified that, prior to December 2001, he worked as a manager at Tryco, where his immediate supervisor was Stacy Wilson, one of Tryco's vice presidents. Wilson reported to Tryco's president, James Dixon. At the time of his testimony in the FLSA suit, Edison worked for Crown Staffing as its industrial manager. His immediate supervisor was still Wilson, then one of Crown Staffing's vice presidents. Wilson reported to Crown Staffing's president, James Dixon, who had also been Tryco's president. Edison also testified that Crown Staffing used the same telephone numbers and the same business location as Tryco and that, at Crown Staffing, he provided staffing for several of the same companies as he had

at Tryco. At the close of Edison's testimony, Robinson's counsel pointed out that, at the time of the FLSA suit, Edison worked for Crown Staffing and that he testified as a representative of Crown Staffing as well as Tryco. Appellants' counsel did not object to the characterization of Edison as a representative of either Tryco or Crown Staffing.

Robinson also testified in the instant proceeding to enforce the judgment from the FLSA suit. He testified that, after his employment with Tryco ended, he called one of Tryco's telephone numbers and spoke with one of his former Tryco coworkers. About six to seven weeks later, Robinson went to the location where Tryco had operated its business and saw that the name of the business at that location had been changed to Crown Staffing. At this location, he saw the same two vans he had driven for Tryco, and he also saw many of the same people who had worked for Tryco as well as a few new people. Robinson testified that, other than the new name of the company and a few new employees, nothing about the business location had changed. He also testified that Tryco was the Dixons' family business, that James Dixon was Troy Dixon's father, and that Troy had been an employee of Tryco and was currently Crown Staffing's manager.

At the close of the evidence, Robinson agreed with appellants' counsel and the trial court that he had abandoned his fraudulent transfer claims, leaving only his claims that (1) Sharon and James Dixon were liable to him for Tryco's

8

judgment debt from the FLSA suit under an alter ego or single business enterprise theory because, as officers of Tryco, they had forfeited that corporation's charter and transferred its employees to Crown Staffing, using the corporate fiction of Crown Staffing as a mere conduit of fraud to avoid Tryco's liabilities, and (2) as officers of Tryco, Sharon and James Dixon were liable for the debts of Tryco, including the judgment in his favor in the FLSA suit, under Tax Code section 171.255, which provides for the personal liability of corporate officers for debts of the corporation incurred after forfeiture of its charter.[2]

On July 15, 2010, following a hearing, the trial court entered final judgment against appellants, holding them jointly and severally liable for the amounts awarded to Robinson against Tryco in the judgment rendered in the FLSA suit.

**Hearsay**

In their second issue, appellants contend that the trial court erred by admitting Edison's recorded testimony from the FLSA suit. They contend that Edison's prior testimony was inadmissible under Texas Rule of Evidence 801 because it was hearsay. *See* TEX. R. EVID. 801(d) (defining hearsay). They further argue that the testimony did not fall within an exception to the hearsay rule under Texas Rules of Evidence 804(a) and (b)(1) because Robinson failed to present any evidence that Edison was unavailable, that he had made a good-faith effort to

---

[2]     TEX. TAX CODE ANN. § 171.255 (Vernon 2008).

9

locate Edison, or that appellants had an opportunity and similar motive to cross-examine Edison in the FLSA suit, as required for testimony from a former proceeding to qualify as an exception to the hearsay rule. *See* TEX. R. EVID. 804(a), (b)(1) (governing admissibility of former testimony from unavailable witness). Robinson responds that Edison's testimony was not hearsay but instead constituted an admission by a party-opponent, which is excluded from the definition of hearsay and, therefore, need not satisfy the requirements for admission as an exception to the hearsay rule.

Appellants' hearsay objection was not preserved and, therefore, presents no ground for reversing the trial court's admission of Edison's testimony. Texas Rule of Appellate Procedure 33.1 requires that, as a prerequisite to presenting a complaint on appeal, the record must show that "the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint" and that "the trial court . . . ruled on the . . . objection . . . either expressly or implicitly; or . . . refused to rule . . . , and the complaining party objected to the refusal." TEX. R. APP. P. 33.1.

Likewise, Rule of Evidence 103 provides that "error may not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or

motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." TEX. R. EVID. 103. Thus, to preserve error for appeal, the party must have made a timely, specific objection at the earliest possible opportunity. *See Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 316 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). (holding that where attorney did not seek "definitive ruling" on admissibility of evidence of conviction before voir dire, complaint that he was unable to question prospective jurors about bias was not preserved). "An objection is sufficient to preserve error for appeal if it allows the trial judge to make an informed ruling and the other party to remedy the defect, if he can." *Campbell v. State*, 85 S.W.3d 176, 185 (Tex. 2002) (quoting *McDaniel v. Yarbrough*, 898 S.W.2d 251, 252 (Tex. 1995)); *see also McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 74 (Tex. 1989) (stating that specific objection enables trial court to understand precise grounds and make informed ruling and affords offering party opportunity to remedy defect, if possible); *Lake v. Premier Transp.*, 246 S.W.3d 167, 174 (Tex. App.—Tyler 2007, no pet.) (observing that specific and timely objection is necessary to preserve argument for appellate review and stating, "To be considered timely, an objection must be specific enough to enable the trial court to understand the precise nature of the error alleged and interposed at such a point in the

11

proceedings so as to enable the trial court the opportunity to cure the error alleged, if any").

Here, appellants' counsel made only a general hearsay objection to the admission of Edison's testimony from the FLSA suit. He did not object with specificity, despite the trial court's invitation to him to do so; nor did he obtain a definitive adverse ruling while the trial court was in a proper position to change its conditional ruling of admissibility and Robinson was in a position to offer other testimony or to subpoena Edison to testify. *See Campbell*, 85 S.W.3d at 185. Thus, appellants did not preserve their hearsay objection, and that objection presents no ground for disregarding Edison's testimony. *See* TEX. R. EVID. 103; TEX. R. APP. P. 33.1; *Campbell*, 85 S.W.3d at 185.

Moreover, even if appellants had preserved this complaint for appellate review, they have failed to establish that Edison's testimony in the FLSA suit constituted inadmissible hearsay in the instant enforcement action.

In general, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Hearsay is inadmissible as evidence unless provided by statute or rules, including the hearsay exception rules. TEX. R. EVID. 802. However, inadmissible hearsay admitted without objection is not denied probative value merely because it is hearsay. *Id.*

12

Under Rules 804(a) and (b)(1), prior testimony is admissible as an exception to the hearsay rule if the proponent proves that the declarant was "unavailable" as defined in subsection 804(a); that a good-faith effort was made to locate and present the witness; and that the party against whom the testimony is offered, or one with a similar interest, had an opportunity to cross-examine the witness. *See* TEX. R. EVID. 804(a), (b)(1). However, if the declarant's statement is not hearsay, no hearsay exception is needed to admit the statement, and Rule 804(b)(1) is irrelevant. *Oyster Creek Fin. Corp.*, 176 S.W.3d at 316–17.

Under Rule 801(e)(2), the admission-by-party-opponent exclusion from the definition of hearsay, statements by a party opponent are not hearsay if they are offered against a party and are the party's own statements in either an individual or a representative capacity. TEX. R. EVID. 801(e)(2); *Oyster Creek Fin. Corp.*, 176 S.W.3d at 317; *Worley v. Butler*, 809 S.W.2d 242, 245 (Tex. App.—Corpus Christi 1990, no writ). Specifically, "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ." TEX. R. EVID. 801(e)(2)(D). To show that a statement is an admission by a party-opponent under Rule 801(e)(2)(D), the existence of the agency or employment relationship must be established, but there is no requirement that the agency relationship be established with independent

13

corroborating evidence. *See, e.g.*, *Tucker's Beverages, Inc. v. Fopay*, 145 S.W.3d 765, 768–69 (Tex. App.—Texarkana 2004, no pet.).

Any statement, including former testimony, may be admitted under one of the admission-by-party-opponent exclusions, regardless of the witness's availability. *Oyster Creek Fin. Corp.*, 176 S.W.3d at 317 (holding that former testimony was not hearsay because it was admission by party opponent, and, therefore, Rules of Evidence did not require trial court to have found witness unavailable as preliminary condition to admitting his testimony). Moreover, if the record discloses any legitimate basis for the trial court's evidentiary ruling, we uphold the ruling. *Id.*

Here, Edison testified in the FLSA suit as a managing employee and corporate representative of both Crown Staffing and, prior to that, Tryco. Edison stated that Crown Staffing continued the same business of providing temporary staff as Tryco at the same location using the same employees under the same managers. Edison's Tryco business card further confirms that Edison was previously employed as an industrial manager at Tryco; and Robinson's testimony confirms that Edison was employed in a managerial position at Crown Staffing at the same location at the time he gave his testimony in the FLSA suit. Robinson's counsel also characterized Edison as a representative of both Tryco and Crown Staffing, and appellants' counsel did not object to this characterization. We

14

conclude that the excerpt of Edison's testimony from the FLSA suit admitted in the instant enforcement action was thus "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *See* Tex. R. Evid. 801(e)(2)(D).

We hold that Edison's recorded testimony from the FLSA suit, the judgment from which Robinson seeks to enforce in this action, was properly admitted under Rule 801(e)(2)(D) as the admission of a party-opponent, and, thus, appellants' hearsay objection is irrelevant. *See Oyster Creek Fin. Corp.*, 176 S.W.3d at 316–17.

We overrule appellants' second issue and turn to the merits of the appeal.

**Liability Under Former Article 2.21 of the Texas Business Corporations Act**

In their first issue, appellants argue that the trial court erred in piercing the corporate veil under a single business enterprise or alter ego theory and finding appellants jointly and severally liable for the judgment against Tryco in the FLSA suit. With respect to this issue, appellants contend (1) the Texas Supreme Court has abolished the single business enterprise theory as a means of piercing the corporate veil; (2) Robinson presented no evidence to support an alter ego theory for piercing the corporate veil; and (3) Robinson abandoned his fraudulent transfer theory and pled no other theory to support piercing the corporate veil.

15

Robinson argues that appellants are jointly and severally liable to him under a single business enterprise theory or alter ego theory for the judgment in the FLSA suit because the Dixons used the corporate forms of Tryco and Crown Staffing as a mere conduit of fraud to avoid paying the judgment awarded to him against Tryco. He contends appellants' actions—forfeiting Tryco's corporate charter for non-payment of franchise taxes after the verdict was delivered in the FLSA suit and before the judgment was entered, transferring Tryco's assets to Crown Staffing on that same day, and leaving Tryco without assets to pay the judgment—justify piercing the corporate veil and holding appellants jointly and severally liable for the judgment in the FLSA suit under former article 2.21 of the Texas Business Corporations Act, now section 21.223 of the Texas Business Organizations Code,[3] because appellants used the corporate fiction to perpetrate a fraud.

Business Organizations Code section 21.223, like its predecessor, article 2.21, provides that an owner of a corporation, such as Tryco, may be held liable to

---

[3] Article 2.21 expired effective January 1, 2010. Article 2.21(a) has been codified in substantially the same form in Texas Business Organizations Code section 21.223. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 456 & n.57 (Tex. 2008) (discussing former article 2.21 and stating, "Sections A and B of this article, after a legislative reorganization of the statutes governing business entities effective January 1, 2006, were recodified in substantially similar form in TEX. BUS. ORGS. CODE § 2.223, and §§ 21.224–.225, respectively") (citing Act of May 29, 2003, 78th Leg., R.S., ch. 182, §§ 1–2, 2003 Tex. Gen. Laws 267, 427, 595).

the corporation or its obligees—such as judgment creditors—for any contractual obligation of the corporation or matter arising from a contractual obligation of the corporation—such as, here, the judgment arising from Tryco's breach of its statutory and contractual obligation to pay Robinson wages in compliance with the FLSA—if the owner "was the alter ego of the corporation" and "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the . . . owner"—here, the fraud of incorporating Crown Staffing, forfeiting Tryco's corporate charter, and transferring Tryco's assets to Crown Staffing to avoid execution of Robinson's judgment against Tryco. TEX. BUS. ORGS. CODE § 21.223(a)(2), (b) (Vernon Supp. 2010); *see also SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 456 & n.57 (Tex. 2008) (quoting terms of former article 2.21 and discussing its legislative history).

Section 21.223 provides, in relevant part:

(a)    A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to

. . . .

(2)    any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or

17

> > constructive fraud, a sham to perpetrate a fraud, or similar theory;
>
> . . . .
>
> (b) Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2), (b). "Actual fraud" as defined by article 2.21 "involves dishonesty of purpose or intent to deceive." *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 387 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding, in context of article 2.21, that owner of corporation that solicited corporate sponsorship for clients was not its owner's alter ego absent evidence that owner enjoyed direct personal benefits resulting from fraud).

"The corporate form normally insulates shareholders, officers, and directors from liability for corporate obligations . . . ." *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986); *see SSP Partners*, 275 S.W.3d at 451 n.29. However, the corporate veil may be pierced on an alter ego theory "where a corporation is organized and operated as a mere tool or business conduit of another . . . ." *Castleberry*, 721 S.W.2d at 272. "Alter ego applies when there is such unity between corporation and individual that the separateness of the

18

corporation has ceased and holding only the corporation liable would result in injustice." *Id.* "It is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Id.*

Parties are not, however, jointly liable for a corporation's obligations "merely because they were part of a single business enterprise," i.e., "merely because of centralized control, mutual purposes, and shared finances." *SSP Partners*, 275 S.W.3d. at 452, 455. Rather, "[d]isregarding the corporate structure involves two considerations": (1) "the relationship between [the] two entities" and (2) "whether the entities' use of limited liability was illegitimate." *Id.* at 455.

To pierce the corporate veil and impose liability under an alter ego theory of liability pursuant to *SSP Partners*, a plaintiff must show: (1) that the persons or entities on whom he seeks to impose liability are alter egos of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, in satisfaction of the requirements of article 2.21—now Business Organizations Code section 21.223(a) and (b).[4] *See id.* at 456 & n. 57.

---

[4]     In *Castleberry v. Branscum*, the supreme court had held that a showing of constructive fraud was enough to demonstrate an illegitimate use of the limited liability afforded to corporations under a single business enterprise theory of

19

We address both prongs of the test with respect to this case.

## A. Appellants as Alter Egos of Each Other

To satisfy the first consideration in piercing the corporate veil—whether the persons or entities sought to be charged with liability are alter egos of the primary debtor—the relationship between corporate entities can be assessed using factors such as:

- whether the entities shared a common business name, common offices, common employees, or centralized accounting;

- whether one entity paid the wages of the other entity's employees;

- whether one entity's employees rendered services on behalf of the other entity;

- whether one entity made undocumented transfers of funds to the other entity; and

- whether the allocation of profits and losses between the entities is unclear.

*Id.* at 450–51.

---

liability. 721 S.W.2d 270, 271 (Tex. 1986); *see also SSP Partners*, 275 S.W.3d at 455. In *SSP Partners*, the court narrowed its prior holding, recognizing that *Castleberry* had been superseded by article 2.21, which "takes a stricter approach to disregarding the corporate structure." 275 S.W.3d at 455. It held that "the single business enterprise liability theory is fundamentally inconsistent with the approach taken by the Legislature in article 2.21." *Id.* at 456. In sum, the court held that the mere fact that two corporations share "centralized control, mutual purposes, and shared finances" is not enough to pierce the corporate veil and hold the officers liable. *Id.* at 451, 455. Rather, a party must also show that the corporate form was used to perpetrate a fraud under article 2.21, now Business Organizations Code section 21.223. *Id.* at 455–56.

20

Here, there is uncontroverted evidence, from Edison, Robinson, and the public records of which the trial court took judicial notice, that James and Sharon Dixon were owners and officers of Tryco. Rather than paying Tryco's corporate franchise tax, which was due and unpaid at the time the verdict was reached and the judgment entered in the FLSA suit, the Dixons forfeited Tryco's corporate charter. The same day they forfeited the corporate charter—after the verdict was returned, but before the judgment was entered on it—James and Sharon Dixon transferred Tryco's assets to Crown Staffing, which they had previously incorporated. Crown Staffing had the same officers as Tryco, including James Dixon, its president; it took over the offices of Tryco at the same location; it used the same telephone numbers as Tryco; it shared common employees with Tryco; it performed the same temporary staffing services for essentially the same companies; and it was managed by the same managers.

Furthermore, the evidence showed that James and Sharon Dixon exercised absolute ownership and control over both corporations, maintained a very significant personal financial interest in both corporations, and used them for personal purposes. Specifically, they neglected the corporate formality of paying Tryco's franchise tax and transferred all of Tryco's assets to Crown Staffing for the purpose of avoiding payment of the judgment in the FLSA suit.

21

The foregoing un-refuted evidence establishes that Tryco and Crown Staffing were both alter egos of Sharon and James Dixon and part of a single business enterprise for purposes of piercing the corporate veil under former Business Corporations Act article 2.21 and under the current provision, Business Organizations Code section 21.223. We hold, therefore, that Robinson satisfied the first prong of the test for finding these appellants jointly and severally liable for the judgment in the FLSA suit.

## B. Use of the Corporate Fiction to Perpetrate a Fraud

The foregoing factors "are almost entirely irrelevant" to the second consideration in determining personal liability under section 21.223—whether the use of limited liability was illegitimate. *Id.* at 455. That determination is made "based on a careful evaluation of the policies supporting the principle of limited liability." *Id.* Therefore, we must look to *SSP Partners* and *Castleberry* to see whether the corporate fiction was used as a means of "perpetrat[ing] an actual fraud on the obligee [Robinson] primarily for the direct personal benefit of the . . . owner[s]" of Tryco and Crown Staffing, the Dixons. TEX. BUS. ORGS. CODE ANN. § 21.223(b).

The supreme court observed in *SSP Partners* that courts "disregard the corporate fiction, even though corporate formalities have been observed and corporate and individual property have been kept separately, when the corporate

22

form has been used as part of a basically unfair device to achieve an inequitable result." 275 S.W.3d at 454. Specifically, courts disregard the corporate fiction

(1)     when the fiction is used as a means of perpetrating fraud;

(2)     where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3)     where the corporate fiction is resorted to as a means of evading an existing legal obligation;

(4)     where the corporate fiction is employed to achieve or perpetrate monopoly;

(5)     where the corporate fiction is used to circumvent a statue; and

(6)     where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.* (quoting *Castleberry*, 721 S.W.2d at 271–72). "Because disregarding the corporate fiction is an equitable doctrine, Texas takes a flexible fact-specific approach focusing on equity" in determining whether the corporate veil should be pierced. *Castleberry*, 721 S.W.2d at 273; *see also Wilson v. Davis*, 305 S.W.3d 57, 69 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

We conclude, on the basis of the evidence in this case, that five of the criteria for piercing the corporate form and finding appellants jointly and severally liable for the judgment against Tryco in the FLSA suit are satisfied: (1) the corporate fiction was used with respect to both Tryco and Crown Staffing as a means of defrauding Robinson by depriving Tryco of assets to pay the judgment

23

awarded against it in the FLSA suit; (2) Crown Staffing was organized and operated as a mere tool or business conduit of Tryco's and James and Sharon Dixon's temporary staffing business; (3) the Dixons forfeited Tryco's charter, organized Crown Staffing, and transferred Tryco's assets to it as a means of evading Tryco's legal obligation to pay the judgment in the FLSA suit; (4) the corporate fiction was used to circumvent the consequences to James and Sharon Dixon of Tryco's violation of a federal statute, the FLSA, by transferring the assets of Tryco, which were subject to Robinson's judgment lien, to Crown Staffing, leaving Tryco without assets to pay the judgment in the FLSA suit; and (5) the corporate fiction was thereby relied upon by appellants to justify a wrong. Thus, the evidence supports an affirmative finding that the corporate fiction was used illegitimately by James and Sharon Dixon, Tryco, and Crown Staffing in violation of the second prong of the test for piercing the corporate veil and imposing liability under article 2.21 or Business Organizations Code section 21.223.

We hold that Robinson has produced evidence sufficient to establish that Crown Staffing was used as the mere tool or business conduit of Tryco and of James and Sharon Dixon for the purpose of perpetrating a fraud by avoiding payment of the judgment entered against Tryco in the FLSA suit. Thus, Robinson has borne his burden of producing proof sufficient to justify piercing the corporate veil under article 2.21 or Business Organizations Code section 21.223 and holding

24

Tryco, James and Sharon Dixon, and Crown Staffing personally liable to him as alter egos of each other for payment of the judgment.

We also hold, however, that Robinson has failed to show by more than a scintilla of evidence that Troy Dixon owned or controlled either Tryco or Crown Staffing or used the corporate fiction illegitimately; therefore, Robinson has not proved Troy Dixon's personal liability to him under section 21.223.

We overrule appellants' first issue as to James and Sharon Dixon, Tryco, and Crown Staffing, and we sustain it as to Troy Dixon.[5]

---

[5] In their third issue, appellants argue that Robinson's suit to enforce the judgment in the FLSA suit is predicated on the claim that James and Sharon Dixon perpetrated a fraud that violated Tax Code section 171.255 by forfeiting Tryco's charter before the judgment was entered. Appellants argue that the Dixons' actions were not illegal or wrongful under section 171.255 and that, therefore, they cannot be personally liable to Robinson under either that section of the Tax Code or Business Organizations Code section 21.223. Because our holding with respect to appellants' first issue is dispositive, we find it unnecessary to reach appellants' third issue.

25

## Conclusion

We reverse the judgment of the trial court as to appellant Troy Keith Dixon and render judgment that Robinson take nothing by his claims against him. We affirm the judgment as to appellants Tryco Enterprises, Inc., Sharon C. Dixon, James Dixon, and Crown Staffing, Inc.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, concurring.

Justice Massengale, concurring in part and dissenting in part.

26