# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 10, 2016

Lyle W. Cayce
Clerk

No. 14-20526

In the Matter of:  DANIEL LEE RITZ, JR., also known as Bo Ritz,

      Debtor

-----------------------------

HUSKY INTERNATIONAL ELECTRONICS, INCORPORATED,

      Appellant

v.

DANIEL LEE RITZ, JR.,

      Appellee

Appeal from the United States District Court
for the Southern District of Texas

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before STEWART, Chief Judge, and KING and ELROD, Circuit Judges.

KING, Circuit Judge:

Daniel Ritz, in financial control of Chrysalis Manufacturing Corp., caused funds to be transferred from Chrysalis which effectively rendered Chrysalis unable to pay a debt owed to Husky International Electronics, Incorporated.  When Ritz filed for Chapter 7 bankruptcy, Husky initiated an

No. 14-20526

adversary proceeding objecting to Ritz's discharge under, *inter alia*, 11 U.S.C. § 523(a)(2)(A).  The bankruptcy court rejected this challenge, holding that Ritz owed no debt to Husky under Texas law.  The district court affirmed the judgment of the bankruptcy court, explaining that, while Ritz owed a debt to Husky under Texas law, Husky could not prevail on its objection under the Bankruptcy Code because a misrepresentation is required to succeed on an objection under § 523(a)(2)(A).  On appeal, this court did not address the state law issue but agreed with the district court's conclusion that Husky could not succeed on its objection under  § 523(a)(2)(A) because that provision requires that the debtor make a misrepresentation.  The Supreme Court reversed, holding that no misrepresentation was required to object successfully to a discharge under § 523(a)(2)(A).  We are therefore required to consider the issue that we pretermitted on Husky's appeal to this court: whether Ritz owes a debt to Husky under Texas law.  We do so because if Ritz is not liable to Husky under Texas law, then there is no debt to discharge and the question of the deniability of a discharge under § 523(a)(2)(A) is moot.  We VACATE the district court's judgment insofar as that court held that Ritz was liable to Husky under Texas law because the district court relied on fact findings not actually made by the bankruptcy court.  However, we agree with the district court's legal conclusion that, under Texas law, depending on subsequent fact findings, Husky may be able to show that Ritz is liable to it.  We REMAND to the district court (for remand to the bankruptcy court) for additional fact-finding as to whether Husky may successfully establish Ritz's liability under state law.

## I. FACTUAL AND PROCEDURAL HISTORY

Because the factual and procedural history of this case has been recounted multiple times, we discuss only the background necessary to decide the issues before us today.  *See generally Husky Int'l Elecs., Inc. v. Ritz*, 136 S.

No. 14-20526

Ct. 1581, 1585–86 (2016) (discussing the factual and procedural background); *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 787 F.3d 312, 315–16 (5th Cir. 2015) (same). Husky International Electronics, Incorporated, (Husky) manufactures components for electrical devices. *Husky*, 136 S. Ct. at 1585. Between 2003 and 2007, Husky sold its products to Chrysalis Manufacturing Corp. (Chrysalis), and "Chrysalis incurred a debt to Husky of \$163,999.38." *Id.* Chrysalis, which was under the financial control of Daniel Ritz at the time, did not pay its debts as they became due. *Id.* "All parties agree that between 2006 and 2007, Ritz drained Chrysalis of assets it could have used to pay its debts to creditors like Husky by transferring large sums of Chrysalis' funds to other entities Ritz controlled."[1] *Id.* In May 2009, Husky filed a lawsuit against Ritz, seeking to hold him personally responsible for the debt Chrysalis owed to Husky pursuant to Texas Business Organizations Code § 21.223(b). *Id.*

Ritz filed a voluntary Chapter 7 petition for bankruptcy, and Husky initiated the adversary proceeding underlying Husky's appeal to this court, objecting to the discharge of Ritz's debt under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). *In re Ritz*, 787 F.3d at 315. The bankruptcy court rejected Husky's arguments, holding that the denial of a discharge was not warranted by any of the Bankruptcy Code provisions advanced by Husky.

---

[1] Although the Supreme Court did not list all of Ritz's transfers, this court previously listed those transfers as follows:

> Specifically, Ritz transferred: (1) \$677,622 to ComCon Manufacturing Services, Inc.; (2) \$121,831 to CapNet Securities Corp. (of which Ritz held an 85% ownership interest); (3) \$52,600 to CapNet Risk Management, Inc. (of which Ritz held a 100% ownership interest); (4) \$172,100 to Institutional Capital Management, Inc., and Institutional Insurance Management, Inc. (of which Ritz held 40% and 100% ownership interests, respectively); (5) \$99,386.90 to Dynalyst Manufacturing Corp. (of which Ritz held a 25% ownership interest); (6) \$26,500 to Clean Fuel International Corp. (of which Ritz held a 20% ownership interest); and (7) \$11,240 to CapNet Advisors, Inc.

*In re Ritz*, 787 F.3d at 314.

With respect to § 523(a)(2)(A),[2] which is the only bankruptcy provision at issue on remand, the bankruptcy court held that Husky could not prevail under this provision because Ritz was not liable to Husky pursuant to Texas Business Organizations Code § 21.223(b).  Husky argued that: (1) Ritz's transfers of Chrysalis's funds were fraudulent transfers under the Texas Uniform Fraudulent Transfer Act (TUFTA), *see* Tex. Bus. & Com. Code Ann. § 24.005; (2) these fraudulent transfers under TUFTA allowed Husky to pierce the corporate veil and hold Ritz personally liable for Chrysalis's debt, *see* Tex. Bus. Org. Code Ann. § 21.223(b); and (3) 11 U.S.C. § 523(a)(2)(A) bars Ritz from discharging his debt to Husky.  The bankruptcy court rejected step two of this argument, holding that Tex. Bus. Org. Code Ann. § 21.223(b) permits veil-piercing only for "actual fraud."  The court explained that "actual fraud" under § 21.223(b) requires a misrepresentation and that Ritz never made a misrepresentation to Husky.  In reaching this conclusion, the bankruptcy court never addressed TUFTA or whether Ritz's transfers constituted actual fraud under TUFTA.  Based on the absence of a misrepresentation, the bankruptcy court held that Husky could not pierce the corporate veil of Chrysalis to hold Ritz responsible for Chrysalis's debt to Husky.  Because Husky could not pierce the corporate veil, Husky "failed to establish any liability against the debtor"; therefore, "there [was] no debt to discharge."  Husky also could not prevail under 11 U.S.C. § 523(a)(2)(A) because, as the court further explained, "the tests for fraud under section 22.223 of [the Texas Business Organizations Code] and the requirements of section 523(a)(2)(A) of the [Bankruptcy] Code are virtually the same."

On appeal, the district court affirmed the judgment of the bankruptcy

---

[2] Section 523(a)(2)(A) excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).

court but for different reasons than those given by the bankruptcy court. Specifically, the district court disagreed with the bankruptcy court that Husky could not pierce the corporate veil under Texas law to hold Ritz responsible for Chrysalis's debt. Although the bankruptcy court held that actual fraud under Texas law required a misrepresentation, the district court disagreed based on both Texas and Fifth Circuit caselaw that held that a plaintiff was able to pierce the corporate veil absent any misrepresentation. The district court explained that a plaintiff may pierce the corporate veil, despite the absence of a misrepresentation, if a plaintiff can prove that the defendant committed "actual fraud" under TUFTA. The district court then, noting the factual findings of the bankruptcy court, explained that the Ritz's transfers "met the requirements for fraudulent transfer[s] under [TUFTA]." Because Ritz's conduct constituted actual fraud under TUFTA, the district court concluded that Husky had shown actual fraud so that the corporate veil of Chrysalis could be pierced, i.e., Ritz could be held responsible for Chrysalis's debt under Texas law.

Despite this conclusion, the district court held that "Husky still [could] not prevail" under § 523(a)(2)(A). The court explained that, "[w]hile the fraudulent transfer without a misrepresentation may qualify as actual fraud under § 22.223(b)(1) to pierce the corporate veil, it cannot meet the requirement under 11 U.S.C. § 523(a)(2)(A) to bar the discharge of the debt." "[S]ince there [was] no representation involved in th[e] Adversary Proceeding, Husky fail[ed] to prevail under § 523(a)(2)(A) to overturn the discharge of Chrysalis' debt to Husky."

Husky timely appealed the district court's judgment to this court, arguing that "Ritz committed 'actual fraud' under Texas Business Organizations Code Section 21.223(b) and thus c[ould] be held liable for Chrysalis's debt," and "that the debt is excepted from discharge in bankruptcy

No. 14-20526

under . . . the 'actual fraud' clause in 11 U.S.C. § 523(a)(2)(A)." *In re Ritz*, 787 F.3d at 316. This court agreed with the district court that, because Ritz had made no misrepresentation to Husky, his conduct did not amount to actual fraud under § 523(a)(2)(A). *Id.* Because this court concluded that § 523(a)(2)(A) did not apply, it did not reach the Texas state law issue. *Id.*

The Supreme Court granted certiorari and addressed whether a misrepresentation is required to show "actual fraud" under § 523(a)(2)(A). *Husky*, 136 S. Ct. at 1585. The Court reversed the judgment of this court, holding that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Id.* at 1586. In reaching this conclusion, the Court relied on historical understandings of "actual fraud" in the bankruptcy context. *Id.* at 1586–87. The Court explained that, "[b]ecause [it] must give the phrase 'actual fraud' in § 523(a)(2)(A) the meaning it has long held, [the Court] interpret[ed] 'actual fraud' to encompass fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Id.* at 1590. While the Court clarified the meaning of actual fraud in § 523(a)(2)(A), it did *not* specifically hold that actual fraud had occurred here or determine whether Husky could ultimately prevail in its attempt to deny Ritz a discharge of the relevant debt. *Id.* Rather, following its holding as to actual fraud, it "remand[ed] the case for further proceedings consistent with [its] opinion." *Id.*

## II. STANDARD OF REVIEW

When we review the decision of a district court sitting as an appellate court, we apply the same standards of review to the bankruptcy court's decision as applied by the district court. *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 652 (5th Cir. 2010). Thus, we review conclusions of fact for clear error and conclusions of law *de novo*. *Id.*

No. 14-20526

## III. DENIAL OF A DISCHARGE UNDER § 523(a)(2)(A)

When we initially decided this case, we agreed with the district court that Husky could not succeed on its challenge under § 523(a)(2)(A) because that provision required a misrepresentation and no misrepresentation was made here. *In re Ritz*, 787 F.3d at 316–21. The Supreme Court reversed this court's decision, and we now vacate the district court's decision with respect to § 523(a)(2)(A) for the reasons given by the Supreme Court.[3] The Supreme Court instructed this court to address specific issues with respect to § 523(a)(2)(A) on remand. Accordingly, we now specifically address the issue pretermitted in our ill-fated opinion: whether Ritz is liable to Husky under Texas state law. Ritz's liability to Husky under Texas law is a threshold question with respect to whether Ritz may be denied a discharge under § 523(a)(2)(A) because, if Ritz is not liable under Texas law, then he owes no debt to Husky.[4] Because, as we explain below, we cannot resolve the state law issue without further fact finding by the bankruptcy court, we do not address the denial of a discharge under § 523(a)(2)(A) here and leave this determination to be made in the first instance by the bankruptcy court, after

---

[3] In our initial decision in this case, we relied, in part, on Fifth Circuit precedent to conclude that actual fraud under § 523(a)(2)(A) required a misrepesentation. *In re Ritz*, 787 F.3d at 319; *see also, e.g., Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) (explaining that "[f]or a debt to be nondischargeable under section 523(a)(2)(A), the creditor must show . . . that the debtor made a representation"); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995) (noting that "under an 'actual fraud' theory, the objecting creditor must prove that . . . 'the debtor made representations'" (quoting *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991)). To the extent that *In re Acosta, RecoverEdge*, and other prior Fifth Circuit cases required that a debtor make a representation in order for a debt to be nondischargeable under § 523(a)(2)(A), those cases are effectively overruled by the Supreme Court's decision in this case. *Husky*, 136 S. Ct. at 1586

[4] In our previous opinion, we explained that "[b]ecause we conclude—as did the bankruptcy and district courts—that [§ 523(a)(2)(A) does not] appl[y], we need not reach" the issue of Ritz's liability under Texas state law. *In re Ritz*, 787 F.3d at 316.

the necessary fact finding, in light of the standard articulated by the Supreme Court.  *See Husky*, 136 S. Ct. at 1589 n.3.

## IV. ACTUAL FRAUD UNDER TEXAS STATE LAW

To succeed in denying Ritz a discharge under § 523(a)(2)(A), Husky must first show that Ritz is liable for the debt owed by Chrysalis to Husky.  To show that Ritz is liable for the debt, Husky relies on Texas Business Organizations Code § 21.223(b), which allows a plaintiff to pierce the corporate veil and hold a shareholder, such as Ritz, liable for the debts of a corporation.  The district court held that Husky could pierce the corporate veil to hold Ritz liable.  In our previous opinion, we did not address whether Ritz could be held liable for Chrysalis's debt to Husky under Texas's veil-piercing statute, but we do so here.  We hold that the district court erred in concluding that Ritz was liable to Husky under the Texas veil-piercing statute because, in so concluding, it relied on a fact finding that the bankruptcy court did not actually make.  However, we agree with the district court that Husky's theory that Ritz is liable for the debt owed by Chrysalis to Husky under Texas law is legally viable and therefore remand for further factual findings on this theory.

Because corporations offer their shareholders limited liability, a plaintiff seeking to impose individual liability on a shareholder must pierce the corporate veil to do so.  *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013).   Texas law allows veil-piercing but only in limited circumstances. *See Schimmelpenninck v. Byrne* (*In re Schimmelpenninck),* 183 F.3d 347, 356 (5th Cir. 1999) ("Texas recognizes various legal theories that facilitate disregarding the corporate form, i.e., piercing the corporate veil . . . .").  Under Texas law, the shareholder of a corporation generally

> may not be held liable to the corporation or its obligees with respect to . . . any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the

alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory[.]

Tex. Bus. Orgs. Code Ann. § 21.223(a)(2).  However, the shareholder may be held personally liable for the business's obligations "if the obligee demonstrates that the . . . beneficial owner . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an *actual fraud* on the obligee primarily for the *direct personal benefit* of the . . . beneficial owner."  *Id.* § 21.223(b) (emphasis added).  Thus, if Husky can show that Ritz perpetrated an actual fraud for his direct personal benefit, Ritz is liable for Chrysalis's debt to Husky under Texas law.  *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2009) (noting that Texas courts "disregard the corporate fiction . . . when the fiction is used as a means of perpetrating fraud" (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 271–72 (Tex. 1986))).

As to the actual fraud requirement, the bankruptcy court held that actual fraud under Texas law required a misrepresentation.  The district court, relying on this court's decision in *Spring Street*, 730 F.3d at 442, disagreed and held that other conduct could satisfy the standard of "dishonesty of purpose and intent to deceive" necessary to show actual fraud.  In particular, the district court held that a fraudulent transfer under TUFTA, if made with the actual intent to hinder, delay, or defraud, could satisfy the actual fraud requirement of the Texas veil-piercing statute.  We agree with this legal conclusion.[5]

---

[5] In resolving issues of state law, "we are bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cty.*, 212 F.3d 269, 271–72 (5th Cir. 2000).  But "[i]f no final disposition is directly on point, we must make an '*Erie*-guess', predicting how that court would rule." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (quoting *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998)).  *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  In making an *Erie* guess "as to how the Texas Supreme Court would rule," this court looks to

"[I]n the context of piercing the corporate veil, actual fraud is not equivalent to the tort of fraud. Instead, in that context, actual fraud involves 'dishonesty of purpose or intent to deceive.'" *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App.—Dallas 2010, no pet.) (quoting *Castleberry*, 721 S.W.2d at 273). In *Spring Street*, we thoroughly reviewed the legislative and legal history of the actual fraud requirement for veil-piercing under Texas law. 730 F.3d at 443–44. While we do not repeat that review here, we note that, based on our examination of Texas law, we concluded that "'[a]ctual fraud' is defined as 'involv[ing] dishonesty of purpose or intent to deceive.'" *Id.* at 442–43 (quoting *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd)).

We also discussed liability under TUFTA at length in *Spring Street*, *see id.* at 436–37, noting that a defendant may be liable under TUFTA if he "committed an actual, fraudulent transfer," *id.* at 436 (citing Tex. Bus. & Com. Code Ann. § 24.005(a)(1)). And we further noted that "[t]he actual fraud prong" of TUFTA provides that

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]

---

(1) decisions of the [Texas] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Texas] Supreme Court decisions on related issues, (3) dicta by the [Texas] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Texas] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010) (alterations in original) (quoting *Hodges*, 474 F.3d at 199).

*Id.* at 436–37 (quoting Tex. Bus. & Com. Code Ann. § 24.005(a)(1)).  Based on the facts before us in *Spring Street*, we did not reach the issue of whether a showing that a defendant made a fraudulent transfer under TUFTA was, by itself, enough to support piercing the corporate veil.  *Spring Street*, 730 F.3d at 445.  We hold today, however, that establishing that a transfer is fraudulent under the actual fraud prong of TUFTA is sufficient to satisfy the actual fraud requirement of veil-piercing because a transfer that is made "with the actual intent to hinder, delay, or defraud any creditor," Tex. Bus. & Com. Code Ann. § 24.005(a)(1), necessarily "involves 'dishonesty of purpose or intent to deceive.'"[6]  *Latham*, 320 S.W.3d at 607 (quoting *Castleberry*, 721 S.W.2d at 273).

Given this holding, if Husky can show that Ritz's transfers in this case satisfy the actual fraud prong of TUFTA, then it can also show that Ritz's conduct constitutes actual fraud for the purposes of veil-piercing.  As direct evidence of actual fraud is often scarce, TUFTA "supplies a 'non-exclusive list of eleven factors, commonly known as badges of fraud, that courts may consider in determining whether a debtor actually intended to defraud creditors under TUFTA.'"  *Spring Street*, 730 F.3d at 437 (quoting *In re Soza*, 542 F.3d 1060,

---

[6] Although no Texas court has previously reached the same holding, looking to the sources this court considers when making an *Erie* guess, we are convinced that the Supreme Court of Texas would arrive at the same conclusion as we do here.  On this point, the Texas Court of Appeals's decision in *Tryco Enterprises* is particularly instructive.  In *Tryco Enterprises*, the appellant, James Robinson, sought to enforce a judgment previously entered in his favor.  390 S.W.3d at 501.  Immediately after this judgment was entered against Tryco Enterprises, Tryco's corporate officers transferred assets from Tryco to another entity they controlled, leaving Tryco without assets to pay the judgment in Robinson's favor.  *Id.* at 502.  The Texas Court of Appeals held that Tryco's corporate veil could be pierced because, *inter alia*, the corporate officers had transferred Tryco's assets to another entity to avoid a legal obligation, i.e., the judgment in Robinson's favor.  *Id.* at 510; *see also McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 591 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (piercing the corporate veil when the owners of a business transferred assets out of the business for their own benefit).

1066 (5th Cir. 2008)).   These badges of fraud, which aid "[i]n determining actual intent," include whether:

> (1) the transfer or obligation was to an insider;
> (2) the debtor retained possession or control of the property transferred after the transfer;
> (3) the transfer or obligation was concealed;
> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) the transfer was of substantially all the debtor's assets;
> (6) the debtor absconded;
> (7) the debtor removed or concealed assets;
> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code Ann. § 24.005(b).

With respect to these badges of fraud, the district court noted that the bankruptcy court "found the trustee had proven four badges of fraud by Ritz and therefore met the requirements for fraudulent transfer under § 24.005." Ritz argued when this case was initially appealed, and repeats on remand from the Supreme Court, that these findings do not exist in the bankruptcy court's opinion.   Ritz is partially correct.   Ritz is incorrect insofar as he suggests that the bankruptcy court did not make factual findings consistent with TUFTA's badges of fraud.   For example, the bankruptcy court noted that "[a]s a result of [the] transfers [effected by Ritz], [Chrysalis] was drained of all its cash and, therefore, could not pay its creditors."   This is sufficient to conclude that, under TUFTA, Ritz "removed . . . assets." Tex. Bus. & Com. Code Ann. § 24.005(b)(7). However, Ritz is correct that the bankruptcy court never drew the inference from its factual findings that Ritz's transfers here were made "with actual

intent to hinder, delay, or defraud any creditor," and therefore satisfied the actual fraud prong of TUFTA. Tex. Bus. & Com. Code Ann. § 24.005.

Because the bankruptcy court—the fact finder in this case—never drew an inference of actual fraud here, even if its factual findings are consistent with that inference, the district court erred in holding that Ritz was liable to Husky under Texas law. Accordingly, we must remand this case to the district court (and thence to the bankruptcy court) for additional fact finding as to whether Ritz's conduct satisfies the actual fraud prong of TUFTA. This is so because, under Texas law, "[i]ntent is a fact question uniquely within the realm of the trier of fact." *Flores v. Robinson Roofing & Const. Co.*, 161 S.W.3d 750, 754 (Tex. App.—Fort Worth 2005, pet. denied) (quoting *Coleman Cattle Co. v. Carpentier*, 10 S.W.3d 430, 433 (Tex. App.—Beaumont 2000, no pet.)). Moreover, "[i]f . . . 'fraudulent intent is only to be deduced from facts and circumstances which the law considers as mere badges of fraud and not fraud per se, these must be submitted to the trier of fact, which draws the inference as to the fairness or fraudulent character of the transaction.'" *Id.* (quoting *Coleman Cattle*, 10 S.W.3d at 434).

If the bankruptcy court concludes on remand that Ritz's conduct satisfies the actual fraud prong of TUFTA and that the actual fraud was for Ritz's "direct personal benefit," Tex. Bus. Orgs. Code Ann. § 21.223(b), then Ritz is liable for Chrysalis's debt to Husky under Texas's veil-piercing statute and the bankruptcy court must then address whether Ritz should be denied a discharge under 11 U.S.C. § 523(a)(2)(A), consistent with the Supreme Court's opinion in this case. If, however, the bankruptcy court concludes that Ritz's conduct does not amount to actual fraud under Texas state law, then there is no debt to discharge, and the question of deniability under § 523(a)(2)(A) becomes moot.

## V. CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district

court, and we REMAND the case for further proceedings consistent with this opinion and the opinion of the Supreme Court.