**Opinion issued August 24, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00160-CV

———————————

## GEORGE M. LEE, Appellant

## V.

## GALLERIA LOOP NOTE HOLDER LLC AND TIG ROMSPEN US MASTER MORTGAGE LP, Appellees

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-12442**

---

## MEMORANDUM OPINION

This declaratory judgment action arises from the foreclosure of two senior liens on a commercial property and the subsequent foreclosure sale of the property to the senior lienholder, which resulted in the extinguishment of appellant George

M. Lee's junior lien on the property. The trial court granted summary judgment against Lee on his claims seeking declarations that the foreclosure sale was invalid because the senior liens merged with title to the property prior to the foreclosure sale and that the substitute trustee's deed was defective and void. On appeal, Lee raises three issues: (1) the trial court erred by granting summary judgment because a genuine issue of material fact existed on his alter-ego merger claim and the summary judgment motion did not address all parts of this claim; (2) Lee's affidavit in support of his summary judgment response constituted competent evidence and was not a sham affidavit; and (3) the substitute trustee's deed was defective and void, the defects could not be cured by a correction deed, and the deed therefore conveyed nothing. We affirm.

**Background**

The real property that is the subject of this appeal is a commercial building located in Houston (the "subject property"). In 2012 and 2014, the owner of the subject property, 1001 West Loop, LP ("1001 West Loop"), obtained loans from MidFirst Bank secured by deeds of trust and liens on the property. These two liens were the senior liens on the property.

In July 2014, Lee loaned nearly $3 million to 1001 West Loop secured by a deed of trust and lien on the subject property. The deed of trust expressly

2

subordinated Lee's lien to MidFirst Bank's two senior liens. The deed of trust was signed by Ali Choudhri as president of 1001 West Loop's corporate general partner.

By May 2019, 1001 West Loop had defaulted on the MidFirst Bank loans. Appellee Galleria Loop Note Holder LLC ("Galleria") decided to purchase the defaulted loans. On May 30, Galleria's sole member, appellee TIG Romspen US Master Mortgage LP ("Romspen"), issued a written resolution stating that Galleria and Romspen had entered into a loan agreement with Choudhri, and Romspen appointed Choudhri as the chief executive officer of Galleria and authorized him to take action to execute and deliver the loan documents.[1] In a May 30 letter to Galleria, Romspen committed to loaning Galleria the funds necessary to purchase the senior liens on the subject property. Choudhri signed the letter accepting the loan on behalf of Galleria, and he personally guaranteed the loan. On May 31, Romspen issued a promissory note to Galleria for $18,500,000. The parties also entered into an assignment of leases and rents. Also on May 31, Romspen, Galleria, and Choudhri entered into a membership interest option agreement granting Choudhri a call option to purchase 100% of the membership interest in Galleria. Finally, on May 31, Galleria purchased the senior liens from MidFirst Bank, effectively making Galleria the senior lienholder on the subject property.

---

[1]    Although various individuals and entities were involved in the transactions relevant here, the only parties to these proceedings are Lee, Galleria, and Romspen.

3

The following month, in June 2019, Galleria foreclosed on the senior liens and posted notice of a substitute trustee's sale on the subject property. The sale was eventually held on September 3, 2019. Galleria was the only bidder on the subject property at the foreclosure sale, and the substitute trustee conveyed the property to Galleria by a substitute trustee's deed. The record indicates that at least two correction deeds were also filed.

Hours after Galleria made its winning bid, Choudhri exercised the option to purchase all of the membership interest in Galleria. The following day, Galleria and Romspen entered into a deed of trust securing Romspen's loan to Galleria with a lien on the subject property. However, no proceeds remained from the foreclosure sale to pay off the junior liens, including Lee's lien, and those liens were therefore extinguished. *See Kothari v. Oyervidez*, 373 S.W.3d 801, 807 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("Under Texas law, generally, if, after a valid foreclosure of a senior lien, a junior lien is not satisfied from the proceeds of a sale, then the junior lien is extinguished.").

In February 2020, Lee filed suit against Galleria alleging that both 1001 West Loop—the pre-foreclosure owner of the subject property—and Galleria—the pre-foreclosure senior lienholder and post-foreclosure owner of the subject property—were alter ego entities used by Choudhri to perpetrate fraud on the junior creditors of loans secured by the subject property, including Lee. Lee sought two declaratory

4

judgments. First, he requested a declaration that the foreclosure sale of the subject property was void because prior to the sale, Choudhri, through alter-ego entities, owned both legal title to the subject property and equitable title as the senior lienholder, and therefore the two titles merged together and extinguished the senior liens leaving nothing to foreclose on. Consequently, Lee alleged that his lien remained as the superior lien on the subject property. Lee also sought a declaration that the substitute trustee's deed was fatally defective, could not be corrected by correction deed, and therefore did not convey legal title of the subject property to Galleria.

Galleria filed an answer denying Lee's claims. Galleria also asserted a counterclaim against Lee for a declaration that he has no valid lien on the property.

Romspen filed a petition in intervention and an application for temporary and permanent injunctions. *See* TEX. R. CIV. P. 60. Romspen asserted two causes of action against Lee for trespass to try title and suit to quiet title. Romspen also requested that the trial court enjoin Lee from attempting to foreclose on or cloud title to the subject property.

Romspen filed a combined no-evidence and traditional motion for summary judgment on all of Lee's claims and its suit for quiet title. Romspen argued that Lee lacked any valid interest in the subject property because his lien had been extinguished pursuant to a valid substitute trustee's sale of the property following

5

foreclosure. It also argued that Lee had no evidence of several elements of the merger doctrine or evidence that Choudhri used any entity as an alter ego. It further argued that the alleged defects in the substitute trustee's deed did not invalidate the conveyance to Galleria. Finally, Romspen argued that it was entitled to summary judgment on its suit to quiet title.

Romspen attached numerous documents in support of its motion. It attached an affidavit from Wesley Roitman, the vice president of Romspen's corporate general partner, describing the details of the transactions in dispute here. Roitman averred that Romspen financed Galleria's purchase of the senior liens from MidFirst Bank and that Romspen was the sole member of Galleria at the time of the foreclosure sale. Roitman also averred that Choudhri never had an interest in or worked for Romspen and that Choudhri did not have an ownership interest in Galleria before the foreclosure sale. Rather, Choudhri exercised an option to purchase all the ownership interest in Galleria "sometime after 6:00 p.m. CT on September 3, 2019," which was the day of the foreclosure sale.

Romspen's motion also relied on deeds of trust executed in 2012 and 2014 securing MidFirst Bank's liens on the subject property. Choudhri signed both deeds of trust on behalf of 1001 West Loop's corporate general partner. The motion also attached the May 2019 agreement between MidFirst Bank and Galleria to sell the two superior liens. This agreement was signed by Roitman on behalf of Galleria, and

Choudhri signed the agreement in several capacities: president of 1001 West Loop, the borrower of the secured loans from MidFirst Bank; guarantor of the loans in his individual capacity; and president of Jetall Companies, Inc., which is not a party to this proceeding. Romspen's motion also attached the notices of the substitute trustee's foreclosure sale; email correspondence between Choudhri, Roitman, and other third parties on September 3, 2019, concerning Galleria's purchase of the subject property at the foreclosure sale and Choudhri's subsequent exercise of the option to purchase the entire membership interest in Galleria; the substitute trustee's deed and two correction deeds; a deed of trust between Galleria and Romspen, dated September 4, 2019, granting a secured lien on the subject property to Romspen the day after the foreclosure sale; and an excerpt of a transcript of Lee's deposition in this case.

Lee filed a response arguing that fact issues precluded summary judgment. He argued that the loan documents attached to Romspen's summary judgment motion controverted Roitman's affidavit. He also argued that other documents created a fact issue concerning whether Choudhri used alter ego entities to own the senior liens on and legal title to the subject property at the same time.

Lee relied on his own affidavit averring that Choudhri had admitted to Lee that Choudhri owned the subject property through various entities. Lee also averred that Choudhri admitted "that he owned 100% of the beneficial interest in [Galleria]

7

and had arranged for a refinance of the property through that entity." Lee further averred that:

> Ali [Choudhri] told me he had changed his mind and he was going to foreclose the MidFirst Bank liens . . . that he had purchased with [Romspen] refinancing funds to cut my [Lee's] and other inferior liens on the Property pursuant to an agreement he had expressly made with [Romspen] to acquire the Property free of inferior liens to be used by Ali. Ali told me he had gotten ownership and control of the Property through [Galleria] by his agreement with [Romspen] and didn't need to pay me.

Lee's response also attached documents showing that Romspen loaned Galleria $18,500,000 to acquire the senior liens on the subject property, and the parties intended that the subject property was to be used by Choudhri. A May 30, 2019 letter from Romspen to Galleria showed an agreement for Romspen to loan the funds, and a May 31, 2019 promissory note evidenced the loan. On May 30, 2019, Romspen—as Galleria's then sole-member—entered written resolutions appointing Choudhri as Galleria's chief executive officer and granting him authority to complete the loan process. Finally, on May 31, 2019, Romspen, Galleria, and Choudhri executed a membership interest option agreement granting Choudhri an assignable call option to purchase "100% of the issued and outstanding membership interest of [Galleria.]" This agreement stated that the purpose of the separate loan agreement was "to acquire certain real property" which "is intended to be used by the Optionholder," whom the option agreement defined as Choudhri.

8

Romspen filed a reply in support of its motion. It first argued that Lee's affidavit was a sham because it contradicted his prior deposition testimony. Romspen argued that, at his deposition, Lee denied knowing who owned or controlled Galleria, whether Galleria had an interest in the subject property, or whether and to what extent Galleria had relationships with Choudhri or Romspen. Lee also denied having heard of Romspen prior to the lawsuit. Romspen further argued that Lee denied having any personal knowledge that the titleholder and lienholder estates on the subject property had merged together; rather, Lee testified that the basis for his claim was his attorney's investigation and conclusion. The record does not include a ruling on these objections. Romspen also replied on the merits.

The trial court granted Romspen's motion for summary judgment. The judgment found that Romspen prevailed on its suit to quiet title; "Romspen has the exclusive right as senior lienholder to the Property"; and Romspen had established its entitlement to an injunction. The judgment denied Lee's request for declaratory relief and permanently enjoined Lee from, without leave of court, seeking to foreclose on the property, filing notices of lis pendens affecting the property, or taking any action which could cloud title to the property. The order expressly denied all other relief and stated that it is a final judgment on all of Lee's claims. The court

9

later entered a separate order granting Romspen's unopposed motion for entry of final judgment. This appeal followed.[2]

## Summary Judgment

On appeal, Lee argues that (1) summary judgment was improper because fact issues exist concerning his claim of alter-ego merger and the summary judgment motion did not address all parts of this claim; (2) Lee's summary judgment affidavit was competent summary judgment evidence and not a sham affidavit; and (3) the substitute trustee's deed was defective and void, and the defects could not be cured by correction deed.

### A.    Standard of Review

We review an order granting a motion for summary judgment de novo. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); *W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 479 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). When a trial court does not specify the grounds for the ruling, we must affirm if any ground advanced in the motion is meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *see also W. Loop Hosp.*, 649 S.W.3d at 480 (stating that when summary judgment order

---

[2]    Galleria did not file an appellate brief.

10

does not specify ground for ruling, appealing party must negate all possible grounds upon which order could have been granted).

When, as here, a party moves for summary judgment on both traditional and no-evidence grounds, we address the no-evidence bases first. *W. Loop Hosp.*, 649 S.W.3d at 479; *see Merriman*, 407 S.W.3d at 248 ("[I]f the non-movant fails to produce legally sufficient evidence to meet his burden as to the no-evidence motion, there is no need to analyze whether the movant satisfied its burden under the traditional motion."). If the nonmovant does not meet his burden under the no-evidence motion, there is no need to address the traditional grounds because they necessarily fail. *W. Loop Hosp.*, 649 S.W.3d at 479. Any claims that survive no-evidence review are then reviewed under the traditional standard. *Id.*

A party may move for no-evidence summary judgment after an adequate time for discovery. TEX. R. CIV. P. 166a(i). "The motion must state the elements as to which there is no evidence." *Id.* No-evidence summary judgment is proper when there is no evidence of one or more essential elements of a claim or defense on which the adverse party bears the burden of proof at trial. *W. Loop Hosp.*, 649 S.W.3d at 479. A no-evidence summary judgment motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact on each element challenged in the motion. TEX. R. CIV. P. 166a(i); *Merriman*, 407 S.W.3d at 248; *W. Loop Hosp.*, 649 S.W.3d at 479.

11

In our review of a summary judgment ruling, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *JLB Builders*, 622 S.W.3d at 864; *W. Loop Hosp.*, 649 S.W.3d at 480. We will sustain a no-evidence challenge when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merriman*, 407 S.W.3d at 248 (quoting *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch*, 118 S.W.3d at 751; *W. Loop Hosp.*, 649 S.W.3d at 480.

## B. Merger of Estates by Alter Ego

In his first issue, Lee argues that a genuine issue of material fact exists concerning his alter-ego merger claim.[3]

---

[3] Lee also argues that summary judgment was improper because Romspen's summary judgment motion did not address all bases of Lee's merger claim. He argues that Romspen addressed Lee's claim that Choudhri exercised an option to purchase the membership interest in Galleria, but it did not address his claim that Galleria was an alter ego of Choudhri. We disagree. Although the summary judgment motion addressed the claim concerning the option on traditional grounds—that is, by presenting evidence that Choudhri did not exercise his option until after foreclosure—the motion also asserted no-evidence grounds concerning several specific elements of merger, including ownership of both legal and equitable title. The no-evidence grounds asserted in the motion shifted the burden to Lee to present

12

In his live petition, Lee alleged that both 1001 West Loop and Galleria were alter-ego entities of Choudhri that he used "to perpetrate frauds on his existing creditors." Lee alleged that when, prior to foreclosure, Choudhri held legal title to the subject property through 1001 West Loop and equitable title to the subject property through Galleria, the senior liens merged with ownership of the property, thereby extinguishing the senior liens and rendering the foreclosure sale void. Lee alleged that Galleria was the alter ego of Choudhri based on Choudhri's exercise of the option to purchase Galleria's membership interest. Lee also alleged that defects in the substitute trustee's deed rendered the conveyance of the subject property void, and the defects could not be cured by correction deeds. Lee sought two declarations: (1) ownership of the property merged with the senior liens, which extinguished the senior liens, rendered the foreclosure sale invalid, and established Lee's lien as the senior lien on the property; and (2) the defective substitute trustee's deed failed to transfer any title to the subject property.

Romspen moved for summary judgment on both no-evidence and traditional grounds. Romspen primarily argued that Lee had no evidence of several elements

evidence raising a genuine issue of material fact on each element challenged in the motion. TEX. R. CIV. P. 166a(i); *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *W. Loop Hosp., LLC v. Houston Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 479 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). Because we conclude below that Lee did not meet this burden, we do not consider the traditional grounds. *See W. Loop Hosp.*, 649 S.W.3d at 479.

required to establish a merger of legal and equitable titles to the subject property. Concerning Lee's claim that Choudhri owned the subject property prior to foreclosure through alter-ego entities, Romspen argued that "Lee has no evidence Choudhri owned or controlled Galleria or Romspen [Galleria's sole member prior to foreclosure] at the time of Foreclosure." As a traditional ground, Romspen argued that Choudhri did not exercise his option to purchase the ownership interest in Galleria until after the foreclosure sale, at which time Galleria no longer owned the liens on the subject property.

We first consider whether Lee presented evidence raising a fact issue on the challenged elements of the merger doctrine. *See W. Loop Hosp.*, 649 S.W.3d at 479 (stating that when party moves for both no-evidence and traditional summary judgment, courts consider no-evidence grounds first).

Merger of estates occurs when a lesser estate is absorbed into a greater estate. *Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 376 (Tex. App.—Fort Worth 2003, pet. denied); *Smith v. U.S. Nat'l Bank of Galveston*, 767 S.W.2d 820, 823 (Tex. App.—Texarkana 1989, writ denied) ("Merger is the absorption or extinguishment of one estate or contract in another, and is largely a question of intent."). "Generally, when one acquires fee simple title to land, all prior liens, inferior titles and interests owned by him are merged into a superior title, unless a different intent is shown." *Smith*, 767 S.W.2d at 823. The merger doctrine, which is

14

disfavored in Texas, applies to lienholder estates as well as to titleholder estates. *Steger*, 134 S.W.3d at 376. The merger doctrine requires proof of six elements:

(1) the existence of a greater and lesser estate;

(2) both estates must unite in the same owner;

(3) both estates must be owned in the same right;

(4) there must be no intervening estate;

(5) merger must not be contrary to the intention of the owner of the two estates; and

(6) merger must not be disadvantageous to the owner of the two estates.

*Flag-Redfern Oil Co. v. Humble Expl. Co.*, 744 S.W.2d 6, 9 (Tex. 1987); *Steger*, 134 S.W.3d at 376; *Franz v. Katy Indep. Sch. Dist.*, 35 S.W.3d 749, 754 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

Romspen's summary judgment motion argued that Lee had no evidence of elements two, three, five, and six.

In this case, identifying the owner of legal title and the owner of equitable title to the subject property under the second element of the merger doctrine requires determining whether to disregard the corporate fiction to find that Choudhri, through alleged alter ego entities 1001 West Loop and Galleria, was the actual owner of the titleholder and lienholder estates. This is because the appellate record shows that, prior to foreclosure, the record owner of legal title to the subject property was 1001 West Loop, and the record owner of equitable title to the property was Galleria. To establish that these estates were owned by the same owner, Lee asks the Court to

15

disregard the corporate fiction and find that 1001 West Loop and Galleria were alter egos of Choudhri and, hence, Choudhri was the true owner of both estates.

"A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations." *U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 212 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006)). However, the corporate veil may be pierced upon a theory of alter ego "where a corporation is organized and operated as a mere tool or business conduit of another . . . ." *Tryco Enters. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)).

Alter ego applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Id.* (quoting *Castleberry*, 721 S.W.2d at 272); *see Wilson v. Davis*, 305 S.W.3d 57, 69–70 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("[I]f the shareholders themselves disregard the separation of the corporate enterprise, the law will also disregard it so far as necessary to protect individual and corporate creditors.") (quoting *Castleberry*, 721 S.W.2d at 272). We determine whether an entity is an alter ego of an individual "from the total dealings of the corporation and the individual, including the degree to which corporate

16

formalities have been followed and corporate and individual property have been kept separately"; "the amount of financial interest, ownership, and control the individual maintains over the corporation"; and "whether the corporation has been used for personal purposes." *Tryco Enters.*, 390 S.W.3d at 508 (quoting *Castleberry*, 721 S.W.2d at 272).

Disregarding the corporate fiction involves two considerations: (1) the relationship between the individual and the entity; and (2) whether the use of limited liability was illegitimate. *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008); *U.S. KingKing*, 555 S.W.3d at 213; *Tryco Enters.*, 390 S.W.3d at 508. To establish alter-ego liability, the plaintiff must show that (1) the entity on which it seeks to impose liability is the alter ego of the debtor; and (2) the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit. *U.S. KingKing*, 555 S.W.3d at 213–14; *Tryco Enters.*, 390 S.W.3d at 508; TEX. BUS. ORGS. CODE § 21.223(b). "Generally, alter ego will not apply to disregard the corporate form absent exceptional circumstances." *U.S. KingKing*, 555 S.W.3d at 214 (quoting *Nugent v. Est. of Ellickson*, 543 S.W.3d 243, 265 (Tex. App.—Houston [14th Dist.] 2018, no pet.)).

### 1. Summary Judgment Evidence

Lee's theory is that Choudhri owned both the legal title and the equitable title to the subject property, and therefore the two estates merged into him and extinguished the senior liens on the property prior to foreclosure and the substitute trustee's sale of the property. To raise a fact issue on whether the two estates merged into the same owner under the second element of the merger doctrine, therefore, Lee was required to present at least a scintilla of evidence that prior to foreclosure, 1001 West Loop—the titleholder—and Galleria—the lienholder—were alter ego entities of Choudhri. *See Merriman*, 407 S.W.3d at 248; *Flag-Redfern Oil*, 744 S.W.2d at 9; *Tryco Enters.*, 390 S.W.3d at 508.

Lee relies on several documents to make this showing. First, a letter from Romspen committing to loan Galleria the funds to buy the senior liens on the subject property stated that there was a beneficial owner subject to the loan terms, although the document did not identify the beneficial owner. Second, the membership interest option agreement stated that the purpose of the loan was to acquire the subject property "which is intended to be used by the Optionholder (Choudhri)[.]" Third, Lee argues that Choudhri signed each of the loan documents individually and as Galleria's authorized agent, and he did so prior to the foreclosure sale. Fourth, Romspen's written resolution appointed Choudhri as Galleria's chief executive officer and authorized him to act on Galleria's behalf before the foreclosure sale.

This evidence does not raise a fact issue on whether Galleria was an alter ego of Choudhri prior to foreclosure. *See Merriman*, 407 S.W.3d at 248. These few documents give almost no insight into the "total dealings" of Galleria and Choudhri. *See Tryco Enters.*, 390 S.W.3d at 508 (quoting *Castleberry*, 721 S.W.2d at 272). At best, these documents show that Choudhri had control over Galleria through Romspen's appointment of him as Galleria' chief executive officer, he signed documents on behalf of Galleria, and Romspen and Galleria intended that the property would be used by Choudhri. *See id.* Crucially, however, these documents do not show whether Galleria's corporate formalities were followed, whether Galleria and Choudhri generally kept their respective properties separate, whether Choudhri had any ownership interest in Galleria prior to exercising his option to purchase its ownership interest after the foreclosure sale, or whether Choudhri used Galleria for personal purposes. *See id.* This evidence falls short of raising a fact issue on whether there is such unity between Choudhri and Galleria that the two are no longer separate. *See id.*; *see also Merriman*, 407 S.W.3d at 248 (stating that appellate court will sustain no-evidence challenge when, among other things, evidence is no more than scintilla); *King Ranch*, 118 S.W.3d at 751 (stating that more than scintilla of evidence exists when evidence rises to level that would enable reasonable and fair-minded people to differ in their conclusions). Thus, we conclude that the Lee

did not meet his burden to raise a fact issue on whether Galleria was an alter ego of Choudhri such that Choudhri was the true owner of the lienholder estate.

Nor did Lee present any evidence showing that 1001 West Loop was an alter ego of Choudhri. The motion for summary judgment argued that there was no evidence of the second element of merger: that *both* estates united in the same owner. *See Flag-Redfern Oil*, 744 S.W.2d at 9; *Steger*, 134 S.W.3d at 376. To defeat this no-evidence challenge, Lee was required to present evidence raising a fact issue on whether Choudhri owned not just the lienholder estate (through Galleria), but also on whether he simultaneously owned the titleholder estate (through 1001 West Loop) prior to the foreclosure sale. *See Merriman*, 407 S.W.3d at 248 (stating that no-evidence summary judgment motion shifts burden to nonmovant to present evidence raising fact issue on each element challenged in motion). Lee did not point to any evidence in his summary judgment response that raised a fact issue on whether 1001 West Loop was an alter ego of Choudhri. Nor does he do so on appeal. Thus, we conclude that Lee did not meet his burden to raise a fact issue concerning the second element of the merger doctrine: that both estates united in the same owner.

## 2. Lee's Affidavit

In his second issue—which we construe as a subpart of his first issue—Lee argues that his summary judgment affidavit constituted competent summary judgment proof raising a fact issue on the alter-ego merger claim and that the

20

affidavit was not a sham. Romspen responds that the affidavit contradicted Lee's prior deposition testimony, and therefore the affidavit was a sham.

The sham affidavit rule prohibits a nonmovant from submitting an affidavit that directly contradicts prior testimony, without explanation, in an attempt to raise a fact issue to survive summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 85, 90 (Tex. 2018). The basis for the rule is to distinguish genuine fact issues from non-genuine fact issues under Rule of Civil Procedure 166a. *Id.* at 86; *see* TEX. R. CIV. P. 166a(c), (i). When an affidavit contradicts earlier deposition testimony and appears to the trial court to be a sham designed to avoid summary judgment, the trial court may require a sufficient explanation and, in the absence of one, may grant summary judgment. *Lujan*, 555 S.W.3d at 90. A contradictory affidavit may be warranted when, for example, the contradiction is based on newly discovered evidence or confusion about what was asked during a deposition. *Id.* In such a circumstance, an affidavit, though facially inconsistent, should be considered upon sufficient explanation. *Id.*

Absent a timely objection and a ruling from the trial court on the objection, however, a complaint that a summary-judgment affidavit is a sham is waived for purposes of appellate review. *Parkway Dental Assocs., P.A. v. Ho & Huang Props., L.P.*, 391 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Scott v. Hunt*, No. 01-11-00042-CV, 2012 WL 983339, at *5 (Tex. App.—Houston [1st

21

Dist.] Mar. 22, 2012, no pet.) (mem. op.); *see also* TEX. R. APP. P. 33.1(a). An objection that an affidavit is a sham is one that complains of a defect in form, not substance. *Scott*, 2012 WL 983339, at *5; *Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 883 (Tex. App.—Dallas 2006, no pet.). A party must object in writing and obtain an express or implied ruling from the trial court to preserve a complaint about the form of summary judgment evidence. *Scott*, 2012 WL 983339, at *5; TEX. R. CIV. P. 166a(f); TEX. R. APP. P. 33.1(a)(2)(A). "[A] trial court's ruling on an objection to summary judgment evidence is not implicit in its ruling on the motion for summary judgment." *Scott*, 2012 WL 983339, at *5 (quoting *Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).

When the trial court does not rule on a challenge to a purported sham affidavit, we presume that the court considered the affidavit as competent summary judgment evidence. *See Parkway Dental Assocs.*, 391 S.W.3d at 604 (stating that party waived complaint that affidavit was sham by failing to timely object and obtain ruling on objection); *Scott*, 2012 WL 983339, at *5; *see also Tejada v. Gernale*, 363 S.W.3d 699, 707 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("We note that the trial court did not strike Raskin's affidavit as a sham. Given that the trial court considered the affidavit as summary-judgment evidence and Raskin proffered an explanation for the change, we decline to strike the affidavit on appeal.").

22

In this case, Romspen's reply in support of its summary judgment motion argued that Lee's summary judgment affidavit was a sham because it contradicted his prior deposition testimony, and Romspen provided examples of the alleged inconsistencies. Romspen argued that "Lee cannot suddenly contradict his prior testimony to create a fact issue to survive summary judgment." Romspen did not, however, request that the trial court strike the affidavit, and the trial court did not rule on the complaint. Therefore, we presume that the trial court considered the affidavit, and we conclude that Romspen has waived any challenge to defects in the form of the affidavit, including whether it was a sham. *See Parkway Dental Assocs.*, 391 S.W.3d at 604; *Scott*, 2012 WL 983339, at *5.

In his affidavit, Lee averred in relevant part that:

Ali [Choudhri] has always indicated to me that the Property was his, that he controlled it, and held ownership of the various entities he transferred record ownership to over the period of my [Lee's] loan. In fact, [before the foreclosure sale] he indicated that he owned 100% of the beneficial interest in [Galleria] and had arranged for a refinance of the property through an entity and that if I would agree to a reduced payoff on my loan . . . , he would agree to pay that amount out of the refinancing funds . . . .

Subsequently, Ali told me he had changed his mind and he was going to foreclose the MidFirst Bank liens, which were prior in time to my lien, that he had purchased with [Romspen] refinancing funds to cut my and other inferior liens on the Property pursuant to an agreement he had expressly made with [Romspen] to acquire the Property free of inferior liens to be used by Ali. Ali told me he had gotten ownership and control of the Property through [Galleria] by his agreement with [Romspen] and didn't need to pay me.

23

This affidavit does not create a fact issue on whether Galleria was an alter ego of Choudhri. While it may show that Choudhri owned all the beneficial interest in Galleria prior to foreclosure, Lee's theory is that Choudhri owned the liens on the subject property through Galleria. *See Tryco Enters.*, 390 S.W.3d at 508. The affidavit does not address information relevant to an alter-ego claim, such as whether Galleria followed corporate formalities and kept other property separate from Choudhri's property or whether Choudhri used Galleria for personal purposes. *See id.* In short, Lee's affidavit does not establish that, "from the total dealings" of Galleria and Choudhri, "there is such unity between [Galleria] and [Choudhri] that the separateness of the corporation has ceased . . . ." *See id.*

Furthermore, the affidavit does not mention 1001 West Loop, the pre-foreclosure-sale owner of the subject property, at all. *See Steger*, 134 S.W.3d at 376 (stating that merger requires proof that *both* estates united in same owner). The affidavit generally refers to ownership of the subject property, stating that Choudhri admitted he owned and controlled the property through various entities. But this does not establish that 1001 West Loop—which held legal title to the property when Galleria held equitable title—was an alter ego of Choudhri. Nor does the affidavit offer any insight into the total dealings between Choudhri and 1001 West Loop; show whether 1001 West Loop's corporate formalities were followed or its property kept separate from Choudhri's property; show the amount of financial interest,

24

ownership, and control Choudhri held in 1001 West Loop; or show whether Choudhri used 1001 West Loop for personal purposes. *See Tryco Enters.*, 390 S.W.3d at 508.

We conclude that Lee did not meet his burden to present a scintilla of evidence that either Galleria or 1001 West Loop was an alter ego of Choudhri prior to the foreclosure sale, and therefore that Choudhri was the actual owner of the lienholder estate and the titleholder estate at the same time. *See Merriman*, 407 S.W.3d at 248; TEX. R. CIV. P. 166a(i). Thus, there is no evidence in the record before us establishing the second merger element: that legal and equitable title united in one owner. *See Flag-Redfern Oil*, 744 S.W.2d at 9; *Steger*, 134 S.W.3d at 376; *Franz*, 35 S.W.3d at 754. We therefore hold that the trial court did not err by granting summary judgment in Romspen's favor on Lee's claim of alter-ego merger.[4] We overrule Lee's first and second issues.

---

[4] Because Lee did not meet his burden to establish that he presented a scintilla of evidence on one element of merger, we need not consider the remaining no-evidence grounds or the traditional grounds concerning this claim. *See Merriman*, 407 S.W.3d at 248 (stating that no-evidence motion for summary judgment shifts burden to nonmovant to present evidence raising fact issue on *each element* challenged in motion); *W. Loop Hosp.*, 649 S.W.3d at 479 (stating that if nonmovant does not meet burden on no-evidence ground, court need not address traditional grounds because they necessarily fail); TEX. R. APP. P. 47.1.

## C.    Validity of Substitute Trustee's Deed

In his third issue, Lee argues that defects in the substitute trustee's deed rendered it void, and the defects could not be cured by correction deed.[5]

"A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." TEX. PROP. CODE § 5.021; *see Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("There is, however, no longer a requirement that a deed or instrument to effect the conveyance of real property must have all the formal parts of a deed recognized at common law or technical language."). This Court has held that there are four "essential characteristics of a deed" that constitute a legally valid conveyance:

(1)    a grantor and a grantee can be ascertained from the instrument as a whole;

(2)    there are operative words of grant showing the grantor's intention to convey to the grantee title to a real property interest;

---

[5]    Lee does not argue that the correction deeds failed to cure the deficiencies. Rather, he argues that a correction instrument could not be used at all because the conveyance did not otherwise comply with all requirements in Property Code Chapter 51 for the sale of real property under a power of sale, specifically the requirement in section 51.002(b)(3) that written notice of the trustee's sale be sent by certified mail to each debtor. *See* TEX. PROP. CODE §§ 5.027(b) (prohibiting use of correction instrument for purposes of sale of real property under power of sale pursuant to Chapter 51 unless conveyance complied with all Chapter 51 requirements), 51.002(b)(3). Because we conclude that the original deed was not defective, we do not reach these sub-issues. *See* TEX. R. APP. P. 47.1.

26

(3)    the property is sufficiently described; and

(4)    the instrument is signed and acknowledged by the grantor.

*Gordon*, 352 S.W.3d at 43; *see also Green v. Canon*, 33 S.W.3d 855, 858 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Lee argues that the substitute trustee's deed does not identify the grantor and grantee and does not contain operative words conveying the property.

The construction of an unambiguous deed is a question of law for the court. *Gordon*, 352 S.W.3d at 43. Our primary duty in construing a deed is to ascertain the parties' intent from the language contained within the four corners of the deed. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Gordon*, 352 S.W.3d at 43. We must strive to harmonize and give effect to all parts of the instrument. *Luckel*, 819 S.W.2d at 462; *Gordon*, 352 S.W.3d at 43. Whether a deed is ambiguous is also a question of law. *Gordon*, 352 S.W.3d at 43. If a deed is worded in such a way that it can be given a definite or certain legal meaning, then the deed is not ambiguous. *Id.* If the deed is susceptible to a single meaning, the court is confined to the plain language of the deed. *Id.*

The substitute trustee's deed recited that a promissory note existed, which was secured by a deed of trust to the subject property, and that the deed of trust was delivered to substitute trustee Kamelia Namazi Momin. The deed also recited several conditions of "[t]his conveyance[.]" The habendum clause stated:

27

TO HAVE AND TO HOLD the above-described property, together with all and singular the rights and appurtenances thereto in anywise belonging, unto it, the said [Galleria], its successors and assigns, forever, in fee simple; and I, the said KAMELIA NAMAZI MOMIN, do hereby bind [Galleria], his heirs, executors and administrators, forever against every person whomsoever lawfully claiming or to claim the same, or any part thereof as fully as I, KAMELIA NAMAZI MOMIN, as Trustee, lawfully can do: HOWEVER, WITHOUT COVENANTS OR WARRANTIES, EXPRESSED OR IMPLIED, OR ANY LIABILITY WHATSOEVER ON ME PERSONALLY[.]"

The deed is signed by Momin as "Trustee," and it is notarized.

Lee first contends that the substitute trustee's deed does not sufficiently identify the grantor and the grantee.[6] Lee argues that Momin and Galleria are identified only in the part of the deed referencing the secured note, but neither is identified as grantor or grantee. Lee also argues that the habendum clause implies that Galleria is both the grantor and the grantee. We disagree.

Momin and Galleria are the only two individuals or entities named in the deed. This Court has previously held that a deed sufficiently identifies a grantee where the person appears in the habendum clause as the person who is "to have and to hold"

---

[6] Both parties' arguments assume that the proper grantor to a conveyance of real property under a substitute trustee's deed is the substitute trustee. Accordingly, for purposes of our analysis, we assume without deciding that the grantor was Momin, the substitute trustee. *See Stephenson v. LeBoeuf*, 16 S.W.3d 829, 836–37 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g) (stating that trustee's authority to sell deed for parties after foreclosure of lien is derived from deed of trust); *see also Mosby v. Post Oak Bank*, 401 S.W.3d 183, 186 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (stating that substitute trustee's deed was signed by trustee).

the property. *Harris v. Strawbridge*, 330 S.W.2d 911, 915 (Tex. App.—Houston 1959, writ ref'd n.r.e.). Here, the habendum clause states that Galleria is to have and to hold the described property in fee simple, and thus Galleria is sufficiently identified as the grantee. *See id.*; *Gordon*, 352 S.W.3d at 43 (stating that conveyance is valid where grantor and grantee can be ascertained from instrument as whole).

Moreover, Momin is the only other person or entity named in the deed, and she signed the deed. *See Gordon*, 352 S.W.3d at 43 (stating that grantor must sign and acknowledge deed); *see also Harris*, 330 S.W.2d at 915 (concluding that deed sufficiently identifies grantor where deed states person was paid consideration and person signed and acknowledged instrument). Lee has not provided any legal authority supporting his argument that the deed does not sufficiently identify the grantor and the grantee. Because we can ascertain the grantor and the grantee from the instrument as a whole, we conclude that the substitute trustee's deed sufficiently identified the grantor and the grantee. *See Gordon*, 352 S.W.3d at 43.

Lee also argues that the deed does not contain operative words of conveyance. A document can operate as a deed only if it conveys an interest in property. *Id.* Without operative words of grant showing the grantor's intention to convey an interest in property to the grantee, an instrument is not a deed. *Id.* at 44. Words of grant are necessary because, without them, it would not be possible to determine what portion of ownership (e.g., 100% or something less) or type of ownership

29

interest (e.g., fee simple or, for example, an easement) is being conveyed. *Cohen v. Tour Partners, Ltd.*, No. 01-15-00705-CV, 2017 WL 1528776, at *6 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.). A conveyance of land does not require magic language or particular terms, but it must at least identify the interest being conveyed. *Id.*; *Gordon*, 352 S.W.3d at 43; *Green*, 33 S.W.3d at 858–59.

"[T]he words 'to have and to hold the above[-]described land * * * unto the said [grantee], her heirs or assigns forever' show an intention to convey title in fee simple to [the grantee]." *Harris*, 330 S.W.2d at 916. If these words appear anywhere in the deed, including in the habendum clause, it is sufficient. *Id.* In this case, the habendum clause of the substitute trustee's deed included this precise language, and we can determine from this language the portion and type of ownership being conveyed to Galleria. *See Cohen*, 2017 WL 1528776, at *6; *Gordon*, 352 S.W.3d at 44. We therefore conclude that the deed contained sufficient words of conveyance.

Lee counters that a habendum clause cannot provide missing grant language in a deed. As support for this argument, Lee relies on *Veltmann v. Damon*, in which a granting clause in a deed conveyed the grantor's "undivided one-half (1/2) interest" in property subject to a life estate retained by the grantor, but the habendum clause recited that the grantee was to have and to hold all of the property, including the grantor's spouse's other undivided one-half interest in the property that was not

included in the granting clause. 701 S.W.2d 247, 247–48 (Tex. 1985) (per curiam). Because the granting clause "obviously conflict[ed] with the deed's habendum clause," the Texas Supreme Court held that the appellate court erred by interpreting the deed to convey more than the grantor's undivided one-half interest as stated in the granting clause. *Id.* at 248. In this case, by contrast, the habendum clause does not conflict with a granting clause, and therefore *Veltmann* is inapposite.

We conclude that the original substitute trustee's deed sufficiently identified the grantor and the grantee and contained operative words of grant. Accordingly, we hold that the trial court did not err by granting summary judgment against Lee on his declaratory claim that the deed was void. We overrule Lee's third issue.

## Conclusion

We affirm the judgment of the trial court.



April L. Farris
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.